**Gary A. HULSE and Judith A. Hulse, Plaintiffs,**

**v.**

**OCWEN FEDERAL BANK, FSB, a New Jersey corporation, Ocwen Financial Services, Inc., a New Jersey corporation, David E. Fennell, an individual, and Routh Crabtree & Fennell, a Washington state professional corporation, Defendants.**

**No. CV–00–169–HU.**

United States District Court, D. Oregon.

Feb. 27, 2002.

Terrance J. Slominksi, Lake Oswego, OR, for Plaintiffs.

Jonathan M. Radmacher, J. Kurt Kraemer, McEwen, Gisvold, Rankin, Carter & Streinz LLP, Portland, OR, for Defendants Ocwen Federal Bank, FSB, and Ocwen Financial Services, Inc.

Robert J. Penfield, Routh Crabtree & Fennell, Bellevue, WA, for Defendants David E. Fennell and Routh Crabtree & Fennell.

## OPINION & ORDER

HUBEL, United States Magistrate Judge.

Plaintiffs Gary and Judy Hulse[1] bring this action against defendants Ocwen Federal Bank, FSB (OFB), Ocwen Financial Services, Inc. (OFSI), David Fennell, and Routh, Crabtree, and Fennell (RCF). The action arises out of a loan from OFB to plaintiffs secured by a trust deed, and default and foreclosure proceedings conducted by Fennell and RCF.

Plaintiffs bring seven claims for relief as follows: (1) a breach of contract claim against OFB, including a claim for account stated; (2) a claim under Oregon's Unfair Debt Collection Practices Act against OFB, Fennell, and RCF; (3) a claim under the federal Fair Debt Collection Practices Act against OFB, Fennell, and RCF; (4) a claim for specific performance against OFB; (5) a claim for libel against OFB and "defendants"; (6) a claim for invasion of privacy against OFB, Fennell, and RCF; and (7) a claim for declaratory relief.

Defendants OFB and OFSI move for summary judgment. Defendants Fennell and RCF separately move for summary judgment. Plaintiffs cross-move for summary judgment. I grant in part and deny in part OFB's and OFSI's motion. I grant in part and deny in part Fennell's and RCF's motion. I deny plaintiffs' cross-motion.

## BACKGROUND

In March 1997, plaintiffs borrowed $151,200 from OFB and promised to repay those funds, under the terms and conditions set forth in a note, purchase money deed of trust, and an adjustable rate rider. On November 13, 1997, OFB assigned the beneficial interest in the deed of trust to OFSI, a sister corporation and affiliate of OFB.

Plaintiffs failed to make any payments for January, February, March, and April 1999. In May 1999, OFB began to foreclose on plaintiffs' home. Hulse Affid. at ¶ 2. Hulse negotiated a forbearance agreement with OFB representative Ernest Santiago. Exh. 105. The agreement was dated May 14, 1999, and signed by Hulse on May 18, 1999. *Id.* at p. 2. The agreement called for the following payments: $6,965.67 due by May 20, 1999, and $1,640.91 due June 1, 1999, July 1, 1999, August 1, 1999, September 1, 1999, and October 1, 1999. *Id.* at p. 1. The agree-

---

1. References to "plaintiffs" are to both Gary and Judy Hulse. References to "Hulse" are to Gary Hulse only.

ment also informed plaintiffs that the "past due amount is $8184.50 which includes attorney fees and costs in the amount of $1176.00." *Id.* Additionally, it stated that late fees in the amount of $69.10 would accrue monthly until the delinquency was cured. *Id.*

Plaintiffs made all of the required payments under the forbearance agreement, but incurred another late fee of $71.89 for a late September 1999 payment. Plaintiffs dispute that the September 1999 payment was late. Because all of the payments pursuant to the agreement were made, OFB terminated the foreclosure proceedings.

Although the forbearance agreement states that the loan's past due amount is $8,184.50, including attorney's fees and costs of $1,176, the payment amounts included in the forbearance agreement may or may not have included that $1,176 in attorney's fees and costs. Exhibit 105 shows the first payment, due May 20, 1999, to be $6,965.67. This is $1,218.93 less than the $8,184.50 past due figure quoted in the agreement.

It is clear that the $6,965.67 figure is the total of the monthly payments owing and due from January 1, 1999, through May 1, 1999. This is seen by looking at Exhibits 107 and 113. Exhibit 113, a reconciliation statement prepared by Tamara Casamento, a research specialist for OFB, shows that the monthly payment that plaintiffs missed for each of the months of January 1999, February 1999, March 1999, and April 1999, was $1,381.96, or $5,527.84 total. The missed May 1999 payment was $1,437.83. *See also* Exh. 107 at p. 1 (February 23, 1999 notice to plaintiffs that because of the adjustable rate mortgage, the monthly principal and interest payment was to change from $1,381.96 to $1,437.83 as of May 1, 1999). The total of the missed monthly payments from January 1, 1999, through May 1, 1999, is $6,965.67,

the amount plaintiffs had to pay by May 20, 1999, as part of the forbearance agreement.

Exhibit 105 then shows payments two through six, due on the first of each month beginning June 1, 1999, through October 1, 1999, to be $1,640.91. The reconciliation statement shows that plaintiffs' monthly payment beginning June 1, 1999, was $1,640.91. But, Exhibit 107 shows that beginning May 1, 1999, plaintiffs' principal and interest monthly payment was to be $1,437.83. Exh. 107 at p. 1. Thus, for June 1, 1999, July 1, 1999, August 1, 1999, September 1, 1999, and October 1, 1999, plaintiffs' monthly payments under the forbearance agreement were $203.08 per month more than their regular principal and interest payment. The reconciliation statement shows that this extra $203.08 was allocated to "Fees" in June 1999 and July 1999. Exh. 113. The description states the payment was "F/B Payment Including Fees." *Id.* The description for the extra $203 .08 for September 1999 and October 1999 is "F/B Payment Including L/C." *Id.* It is reasonable to assume that "L/C" may mean late charge. *Id.* For August 1999, the reconciliation statement shows $87.93 of the $203.08 being allocated to "Fees," and the remainder, or $115.15, being allocated to "L/C." The description there states that the payment was "F/B Payment Including Fees." *Id.*

The transaction summary, Exhibit 110, also shows the extra $203.08 as an "Expense Payment" for the months of June 1999 and July 1999, and that it was applied to "Other." Exh. 110 at p. 22. It shows an extra $203.08 for September 1999 and October 1999 as "Late Charge" payments, also applied to "Other." *Id.* Finally, it shows the extra $203.08 for August 1999 as divided between $87.93 for "Expense Payment," and $115.15 as "Late Charge" pay-

ment, both of which were applied to "Other." *Id.*

Thus, the records show that from June 1, 1999, through October 1, 1999, plaintiffs paid $203.08 per month more than their principal and interest payment and that this $203.08 monthly sum was applied to various fees and charges which had apparently accrued on plaintiffs' account.

In her affidavit, Casamento explains that as of the date of the May 14, 1999 forbearance agreement, plaintiffs owed $478.59 in fees and costs, independent of the $1,176 incurred by Regional Trustee Services in connection with the foreclosure proceedings begun in May 1999. Casamento Declr. at ¶ 12; Exh. 113. Those fees were incurred as follows: $225 for a June 1998 foreclosure fee, $250 for a "BPO Fee" in November 1998, $7.75 for a property inspection in April 1999, and $7.75 for another property inspection in May 1999. Because of a $4.16 payment toward fees remitted with plaintiffs' September 1, 1998 payment, the total fees owed as of the May 14, 1999 forbearance agreement was $486.34. Exh. 113. Casamento also states that as of that date, plaintiffs owed $827.58 in late charges. *Id.;* Exh. 113.

She further explains that the "extra" $203.08 in payments plaintiffs made as part of the forbearance agreement, plus additional payments made in November and December 1999, reduced the fees owed to zero as of December 10, 1999, and the late charges to $137.34 as of that date. *Id.;* Exh. 113. The reconciliation statement indicates that the $203.08 for the months of June and July 1999 were first applied to the fees owing on the account, making the balance of fees owed $80.18 as of July 14, 1999. Exh. 113. An additional $7.75 for a June property inspection was added on July 23, 1999, making the balance of fees owed $87.93. *Id.*

Then, $87.93 of the extra $203.08 tendered as part of the August 1, 1999 pay-

ment was allocated to the fees owed, rendering that balance zero. *Id.* The balance of that $203.08, or $115.15, was then applied toward the owing late charges, which, as of July 23, 1999, were $899.47. *Id.* The extra $203.08 for September and October were allocated to the owing late charges. *Id.* Thus, according to Casamento, at the time all of the payments called for in the forbearance agreement had been made, plaintiffs were current on principal and interest, owed nothing in fees, and owed $450.05 in late charges. *Id.*

Hulse, however, states that Santiago told him that *all* fees, payments, and anything else that OFB claimed plaintiffs owed, were included in the forbearance agreement. G. Hulse Affid. at ¶ 5. Thus, he asserts that the forbearance agreement took care of all outstanding balances on the account.

On December 6, 1999, Regional Trustee Services Corporation, the company OFB had used to initiate the foreclosure proceedings against plaintiffs' property in May 1999, issued a bill to OFB for $1,176 for its services. Exh. 108.

On December 14, 1999, in response to plaintiffs' request generated by their attempted refinance of the debt, OFB issued a written payoff statement to plaintiffs. In relevant part, the payoff statement provided that the amount due through December 22, 1999, was $150,139.53. This represented the total of $149,005.97 for principal, $1,058.56 for interest due, $45 for a satisfaction fee, $20 for a fax fee, and $10 for a quote fee. Exh. 111. It also provided that the interest per diem was $48.12. *Id.* It expressly stated as follows:

**PAYOFF EXPIRATION DATE: 12–22–99**

Funds received after **12–22–99** will require an additional **$48.12** interest per day. This payoff quote expires on **12–22–99** and becomes null and void after that date.

*Id.* The payoff statement also indicated that upon receipt of funds by OFB, OFB would verify whether the amounts received were correct. *Id.* It went on: "In the event that the funds received are less than the total amount necessary to satisfy the loan, [OFB] will return the funds and continue to accrue interest on the loan." *Id.*

Plaintiffs did not make payment to OFB on or before December 22, 1999, and by its terms, the December 14, 1999 payoff statement expired. On December 31, 1999, OFB paid the $1,176 bill from Regional Trustee Services Corporation. Exh. 108.

On or around January 19, 2000, OFB received a request for an updated payoff statement from a person named "Wendy" at First American Title. Casamento Affid. at ¶ 8. "Wendy" asked for a quote good through January 25, 2000. *Id.* Plaintiffs allege that during the conversation, OFB orally confirmed that the payoff amounts provided in the written December 14, 1999 payoff statement, were the same and no additional amounts were owed. Wendy Wilson Declr. at ¶ 3. OFB admits that the escrow agent contacted OFB and asked for a written payoff quote, but denies that it made any oral representations concerning the validity of the December 14, 1999 payoff statement.

On January 24, 2000, OFB generated another written payoff statement for plaintiffs' property. Exh. 112.[2] This payoff statement showed a total due of $153,229.33 comprised of the following figures: $149.005.97 in principal, $2,886.99 in interest, $1,176 in "Other Advances," $75.37 in late charges, $45 for a satisfaction fee, $20 for a fax fee, and $20 for a quote fee. *Id.* As with the December 14, 1999 payoff statement, this statement also indicated that the interest per diem was $48.12. *Id.*

It also provided that the payoff expiration date was 1/31/00 and stated that "[f]unds received after 01/31/00 will require an additional $48.12 interest per day. This payoff quote expires on 01/31/00 and becomes null and void after that date." *Id.*

On or about January 24, 2000, First American Title sent a check to OFB in the amount of $151,775.61, and directed that OFB send the note, trust deed, and a request for reconveyance, to the title company. On January 25, 2000, OFB received the check from First American Title. On that same date, OFB wrote to First American Title, advising that the amount of the check was insufficient. OFB returned First American's check with its letter. Plaintiffs took the funds that were returned to them, and gave the money to their attorney, who is holding it in a trust account.

OFB has charged interest on the unpaid balance of plaintiffs' loan from December 10, 1999, through April 30, 2000, at a rate of 11 .625% per annum, from May 1, 2000, through October 31, 2000, at the rate at 12.250% per annum, and since November 1, 2000, at 12.875% per annum. Plaintiffs agree that OFB has attempted to charge these interest charges, but plaintiffs deny that any interest is owed.

2. There is a discrepancy regarding the date this payoff statement was sent. The date on the actual statement is January 24, 2000. In her declaration, Casamento states that OFB sent the payoff statement on January 24, 2000. Casamento Declr. at ¶ 10. But, the "Comments Log" for plaintiffs' account shows a January 24, 2000 entry which states "PAYOFF PROCESSED TODAY/PENDING APPROVAL". Exh. 110 at p. 5. It then shows that the payoff was executed on January 26, 2000, and faxed to a number with a Seattle area code. *Id.* Additionally, Hulse states in his affidavit that even though the January 24, 2000 payoff statement seen in Exhibit 112 is addressed to plaintiffs, he did not receive this document. G. Hulse Affid. at ¶ 6.

Plaintiffs filed this lawsuit on February 2, 2000.

On April 7, 2000, OFSI reassigned its interest in the deed of trust back to OFB. Exhibit 109 is entitled "Assignment of Deed of Trust" and states that the undersigned, as beneficiary, grants, conveys, assigns, and transfers to OFB, all beneficial interest under the referenced deed of trust executed by plaintiffs, to OFB. *Id.* It is dated April 7, 2000. The undersigned appears in type as "Ocwen Financial Services, Inc." *Id.* Then, it is signed by a person whose signature is unreadable. Immediately under the signature, it states, in print, "Trini Donato [two letters which are mostly illegible, possibly S.R.] V.P." *Id.* The document is notarized and indicates that Trini Donato and OFB personally appeared before the notary and Donato was known to the notary as the "SR. V.P. of the corporation that executed the foregoing instrument ..." *Id.* The assignment was recorded in Clackamas County on July 26, 2000. *Id.*

Plaintiffs contend that the assignment was insufficient on its face and is contradicted by the evidence submitted in defendants' concise statement. This issue is discussed below.

On April 7, 2000, OFB appointed Fennell as successor trustee. Exh. 151. The appointment is dated April 7, 2000, and recites that OFB, as the present beneficiary, appoints Fennell as successor trustee under the trust deed. *Id.* In type, the "undersigned beneficiary" appears as OFB, under which a signature and printed name appears. The printed name shows that Trini Donato, "Sr VP" signed the appointment. *Id.* The document was recorded in Clackamas County on July 26, 2000. *Id.*

Also on April 7, 2000, Fennell and RCF received a referral from OFB to commence a non-judicial foreclosure of the March 31,

1997 deed of trust, based upon OFB's representation to Fennell that plaintiffs defaulted on the loan as of January 1, 2000. Exh. 150 (Fennell Declr.) at ¶ 3.

On or about July 25, 2000, OFB instituted non-judicial foreclosure proceedings under the deed of trust. On that date, RCF and Fennell issued a "Trustee's Notice of Sale." Exh. 153. Exhibit 153 shows that the document, along with instructions for service pursuant to Oregon Revised Statute § (O.R.S.) 86.740, was faxed to a number in Portland on July 25, 2000. *Id.* In their concise statement of material facts, RCF· and Fennell state that the document was delivered to Nationwide Process, a process service company located in Oregon. Plaintiffs do not dispute this assertion. The instructions for service of the notice of sale required that the notice be served upon plaintiffs in the manner in which a summons is served under Oregon Rule of Civil Procedure "7D(d) and 7D(3)." *Id.*

Pursuant to O.R.S. 86.735, a Notice of Default and Election to Sell was recorded in Clackamas County on July 26, 2000. Exh. 152. On or about September 8, 2000, a sign was placed on plaintiffs' property. G. Hulse Affid. at ¶ 16. The sign stated "URGENT NOTICE" and was addressed to "ANY OCCUPANT OF THIS PROPERTY." Exh. 4 to G. Hulse Affid. It requested that any occupant contact "Chris @ 241–0636 *immediately* to arrange for delivery of documents regarding the foreclosure of this property." *Id.*

On September 12, 2000, an employee of Nationwide Process Service, Inc. mailed a true copy of the Trustee's Notice of Sale, along with a copy of the Notice under the Fair Debt Collection Practices Act, via First Class Mail, postage prepaid, with a statement of the date, time, and place, at which substitute service was made, to Hulse. Exh. 154.[3]

---

**3.** In their concise fact statement, RCF and Fennell assert that pursuant to O.R.S. 86.750,

A letter from RCF was mailed to the property address on or about November 2, 2000. Exh. 155. It was addressed to plaintiffs and "All Occupants" but the greeting was to "Occupants." *Id.* It indicated that the property was to be sold at a trustee's sale on December 1, 2000. *Id.* It informed plaintiffs and "all occupants" that pursuant to O.R.S. 86.755(5), the property had to be vacated on or before December 11, 2000. *Id.*

On November 27, 2000, a Rescission of Notice of Default dated November 20, 2000, was recorded in Clackamas County. Exh. 156. In January 2001, Fennell took all steps necessary to abort the foreclosure process. Exh. 150 at ¶ 6. The foreclosure process has not been resumed. *Id.*

## STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or de-

fense.' " *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991) (quoting *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. *T.W. Elec. Serv.,* 809 F.2d at 630–31.

■ If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. *Id.; In re Agricultural Research and Tech. Group,* 916 F.2d 528, 534 (9th Cir. 1990); *California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987).

## DISCUSSION

I. OFB and OFSI's Motion for Summary Judgment

A. Breach of Contract/Account Stated

Plaintiffs allege that OFB breached its contract by attempting to charge them

---

the Trustee's Notice of Sale was served upon plaintiffs on September 11, 2000. Defts' RCF and Fennell Concise Stmt at ¶ 10. In support of this statement, they cite Exhibit 150, which is Fennell's declaration. However, Fennell's declaration says nothing about plaintiffs being

served with the notice, much less on that date. Gary Hulse, in his affidavit, states that plaintiffs received the Trustee's Notice of Sale, but he does not indicate on what date or in what manner, whether by personal service or by mail. G. Hulse Affid. at ¶ 8.

more than they owed. They also allege that the December 14, 1999 written payoff statement and the alleged January 18, 2000 oral payoff quote, together with their January 24, 2000 tender, constitute an account stated between the parties. For the reasons explained below, I deny summary judgment to OFB on the breach of contract claim, but grant summary judgment to OFB on the account stated claim.

### 1. Breach of Contract

■ OFB argues that plaintiffs failed to tender the amount they owed and thus, OFB did not breach its contract with plaintiffs. OFB contends that because it was not billed for the $1,176 in attorney fees and costs associated with the spring 1999 foreclosure, until December 6, 1999, and did not add that amount to plaintiffs' account until OFB paid that bill on December 31, 1999, plaintiffs' tender on January 24, 2000 was short some amount for those attorney's fees.

As explained in the background section of this Opinion, the exhibits and Casamento's affidavit show that the evidence is capable of sustaining OFB's argument. As noted above, plaintiffs' last payment under the forbearance agreement was due October 1, 1999. After that payment was made, plaintiffs were current on their principal and interest and owed nothing in fees. They still owed $450.05 in late charges. Exh. 113. Their November monthly payment contained an additional $203.08 over and above the principal and interest. *Id.* This was used to reduce the late charge balance to $246.97. *Id.* On December 9, 1999, OFB waived an earlier assessed late charge and credited plaintiffs' account in the amount of $109.63. *Id.* This was used to further reduce the late charge balance to $137.34. *Id.* Then, however, on December 31, 1999, OFB added $1,176 in fees to plaintiffs' account because of the foreclosure fees that OFB had paid that date, after receiving the December 6,

1999 bill from Regional Trustee Services. *Id.* Thus, the January 2000 payment made by plaintiffs, based on the amount in the December 14, 1999 payoff statement, did not fully pay off the account.

On the other hand, however, the evidence is also capable of sustaining plaintiffs' argument that the payments made under the forbearance agreement eliminated all outstanding fees and brought plaintiffs' account current. Thus, plaintiffs contend, because there is no dispute that they made all of the payments called for in the forbearance agreement, they tendered the correct amount to OFB in January 2000 when they attempted to pay off the loan. In support of their argument, plaintiffs state that OFB employee Santiago told Hulse that the forbearance agreement included "all fees, payments, and anything else that [OFB] claimed that [he] owed[.]" G. Hulse Affid. at ¶ 5.

OFB argues that plaintiffs cannot rely on an alleged oral conversation between Hulse and Santiago to vary the terms of the forbearance agreement because modification of the parties' obligations must be in writing to be effective in that the note and deed of trust relate to an interest in real property. As OFB explains, its ability to foreclose its security interest depends on plaintiffs' payment, or non-payment, of the debt. Any change in the nature or amount of the obligation of that debt would therefore influence an interest in real property. Because of the relation to an interest in real property, and because the note and deed of trust are fully integrated, a written agreement is necessary. O.R.S. 41.580; O.R.S. 41.740; *see also Abercrombie v. Hayden Corp.*, 320 Or. 279, 292, 883 P.2d 845, 853 (1994) (unambiguous, integrated writings could not be contradicted by alleged oral extension of closing date).

Additionally, OFB contends, to the extent that plaintiffs may have believed that OFB consented to eliminate certain

charges in the forbearance agreement, such a belief was clearly contrary to the terms of the forbearance agreement. As OFB explains, plaintiffs' consideration for the forbearance agreement was making certain listed payments. OFB's consideration was agreeing to suspend foreclosure proceedings as long as plaintiffs complied with the terms of the agreement. OFB argues that because the deed of trust expressly stated that forbearance "shall not be a waiver of or preclude the exercise of any right or remedy[,]" Exhibit 101 at p. 4, ¶ 11, and the forbearance agreement made no other promise except to suspend foreclosure proceedings, the agreement cannot be interpreted as a waiver of OFB's right to seek full payment of amounts it allegedly was owed.

OFB also argues that at the time of the forbearance agreement, plaintiffs knew that they had failed to make the previous five payments, with each missed payment carrying a late fee. OFB asserts that it should have been clear from the agreement's payment structure that the first payment did not pay off the late fees assessed for those five months or the other fees and late charges assessed before January 1999. OFB argues that plaintiffs, knowing of the substantial late charges and other fees, could not have reasonably believed that the forbearance payments brought them current.

■ I find OFB's arguments unpersuasive. First, while any alleged oral statements by Santiago to Hulse may be inadmissible because they violate the parol evidence rule, the agreement itself, without resort to oral statements, is ambiguous. As noted above, the agreement states that "the past due amount is $8184.50 which includes attorney fees and costs in the amount of $1176.00" Exh. 105. This shows that OFB knew, in May 1999, six months before it was actually billed for the services, that the amount of fees incurred in conjunction with the spring 1999 foreclosure was $1,176. Although the agreement does not mention the pre 1999 debt on the account, it is not beyond reason, given the language, for the recipient of the written foreclosure agreement to view it as a settlement of all past due amounts, including those owing for prior defaults and late payments.

Second, the December 14, 1999 payoff statement included neither the $1,176 in fees for the spring 1999 foreclosure process, nor the $137.34 allegedly owing in late charges. This written document is evidence of the parties' intent that is available for use in construing the ambiguous forbearance agreement. Because the December 14, 1999 payoff statement does not indicate that those fees are owing, it could show that the parties intended the payments made under the forbearance agreement to bring plaintiffs current in their account.

Finally, given that this was an adjustable rate mortgage which carried a variable interest rate, and one that was increasing in the spring of 1999, plaintiffs could have reasonably assumed that OFB was willing to write off some of plaintiffs' account balance in exchange for keeping plaintiffs as paying customers and ones who were tied to a contract which, at that time, was providing OFB with an increasing income stream.

Because the forbearance agreement is subject to two differing, but reasonable, interpretations, there is an issue of fact regarding whether plaintiffs owed more than they paid when they attempted to pay off the mortgage in January 2000. Thus, summary judgment to OFB/OFSI on the breach of contract claim is inappropriate.

2. Account Stated

■ "The crux of an account stated is an agreement between the parties that a certain amount is owing and will be paid."

*Sunshine Dairy v. Jolly Joan*, 234 Or. 84, 85, 380 P.2d 637, 638 (1963); *see also Free v. Wilmar J. Helric Co.*, 70 Or.App. 40, 44, 688 P.2d 117, 120 (1984) (an account stated is an agreement between persons who have had previous transactions of a monetary character fixing the amount due and promising payment). The agreement may be express or implied. *Free*, 70 Or.App. at 44, 688 P.2d at 120.

 An action on an account stated is upon a new promise to pay a specific amount and not upon the original debt or items of the account. *Tri–County Ins., Inc. v. Marsh*, 45 Or.App. 219, 223, 608 P.2d 190, 193 (1980). The promise resulting from the accounting is the gist of the cause of action. *Id.* It is necessary for a plaintiff claiming an account stated to establish an agreement to pay a particular amount of money calculated on the basis of previous monetary transactions of the parties. *Id.*

 Most account stated cases concern the usual situation where a creditor sues a debtor based on the creditor having sent a billing statement to the debtor and receiving neither payment nor objection in response. Plaintiffs cite no cases in which an account stated claim was sustained in favor of the debtor based on a theory that the creditor made an oral representation as to what was owed and that oral representation was later alleged, by the creditor, to have not been made or to have been inaccurate. However, assuming an account stated theory applies in such situations, I agree with OFB that plaintiffs cannot base an account stated theory on the alleged January 2000 oral extension of the December 14, 1999 payoff statement.

OFB argues that the alleged oral extension of the December 14, 1999 payoff statement is inadmissible because of the parol

evidence rule. Because the oral statement is directly contrary to the December 14, 1999 written payoff statement which states that it is null and void after December 22, 1999, OFB argues that plaintiffs may not vary the terms of the December 14, 1999 payoff statement with the oral statement.

In response, plaintiffs argue that the December 14, 1999 payoff statement is not a contract so the parol evidence rule does not apply and does not prohibit the introduction of evidence regarding its terms. Alternatively, plaintiffs argue, the December 14, 1999 payoff statement is ambiguous and thus, any subsequent oral representations made about it should come in.

 In this case, the note and deed of trust are the contract agreements and, as discussed above, because they relate to an interest in real property, any modifications to those documents must be in writing. O.R.S. 41.580; O.R.S. 41.740; *see also Abercrombie*, 320 Or. at 292, 883 P.2d at 853 at (unambiguous, integrated writings could not be contradicted by alleged oral extension of closing date). As a result, any payoff quote would need to be in writing given that it is properly viewed as a "modification" of the note and deed of trust. Thus, the December 14, 1999 payoff statement was valid because it was in writing. But, it expired on December 22, 1999. The subsequent oral extension of that statement, on January 18 or 19, 2000, would not be valid under the parol evidence rule, not because it is a modification of the December 14, 1999 statement, but because it is a subsequent payoff quote in its own right and must have been in writing to be potentially binding. Therefore, plaintiffs cannot base an account stated argument on the alleged oral representation, made approximately January 18 or 19, 2000.[4] I grant summary judgment to OFB on the account stated claim.

---

4. As with the December 14, 1999 payoff quote, however, the alleged oral extension of

that payoff quote may be relevant evidence of

### B. Fair Debt Collection Practices Act

▮ Plaintiffs allege that OFB violated the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692o, (FDCPA), by contacting plaintiffs directly through telephone calls and correspondence after learning that plaintiffs were represented by counsel. Plaintiffs also incorporate by reference their allegations in connection with the Oregon debt collection claim, discussed below. OFB contends that there was no violation of the FDCPA because, as the originator of the loan, it is not a debt collector subject to the statute.

The FDCPA prohibits a debt collector from communicating with a consumer in connection with the collection of any debt if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address. 15 U.S.C. § 1692c(a)(2). The FDCPA provides that a "debt collector"

> means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.... The term does not include-
>
> \* \* \* \* \* \*
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (ii) concerns

the parties' intent in construing the ambigu-

a debt which was originated by such person[.]

15 U.S.C. § 1692a(6)(F)(ii). Based on the exception in subsection (F)(ii), OFB argues that it was not a debt collector because it was the originator of the loan.

▮ Reported cases interpreting the originator exception are few. Some have concluded that the exception to the definition of "debt collector" for original lenders arises under the "creditor" exception under section 1692a(6)(A), not the originator exception under section 1692a(6)(F)(ii). As explained in a 1990 District of Delaware case, because the original lender is already covered by section 1692a(6)(A)'s exception for creditors, the exception for originators applies to entities besides the original lender but which play a significant role in the transaction from its origination. *Holmes v. Telecredit Serv. Corp.*, 736 F.Supp. 1289, 1293 (D.Del.1990); *see also Buckman v. American Bankers Ins. Co. of Fl.*, 115 F.3d 892, 895 (11th Cir.1997) (bail bondsman who played a significant role in original bail bond contract was exempt from the FDCPA when it tried to collect on an interrelated indemnity agreement and promissory note given as collateral); *Games v. Cavazos*, 737 F.Supp. 1368, 1386 (D.Del.1990) ("the exception for persons who 'originate' a debt refers to persons other than the original lender.").

▮ Because I conclude that OFB lost the ability to come within the originator exception when it transferred its interest in the trust deed to OFSI, I need not decide if the originator exception includes only entities which are non-original lenders but which played a substantial role in the origination of the loan, or includes both original lenders and the "substantial players." The statute protects originators because first, as a society we want to en-

ous forbearance agreement.

courage the lending of funds, and second, Congress targeted those in the business of collecting funds owed to others. When an original lender transfers away its interest, it loses the protection afforded it by the FDCPA. Here, because OFB transferred its interest to OFSI, it was no longer entitled to shield itself with the originator exception.

Instead, OFB as the original lender is excepted from the debt collector definition as a creditor under section 1692a(6)(A). However, "creditor" is defined as "any person who offers or extends credit creating a debt or to whom a debt is owed, *but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.*" 15 U.S.C. § 1692a(4) (emphasis added).

 Here, OFSI transferred its beneficial interest to OFB in April 2000, after plaintiffs were in default. Although the record strongly suggests that OFB received the assignment from OFSI for the purpose of collecting a debt owed to itself and not to another, I cannot make that determination as a matter of law on this record. If the reassignment from OFSI to OFB was "solely for the purpose or facilitating collection of such debt for another[,]" the creditor exception to the debt collector definition does not apply to OFB. If the reassignment was not for that purpose, OFB is not a debt collector under the statute. Because the evidence on this issue is not fully developed in this record, I deny summary judgment to OFB on the FDCPA claim.

 Whether OFB is a debt collector under the FDCPA is a threshold issue for the FDCPA claims. However, even if OFB is subject to the FDCPA, it is entitled to summary judgment on any allegations arising out of its conduct in seeking foreclosure, as distinguished from any acts it engaged in before the initiation of the foreclosure process.

Incorporated into plaintiffs' FDCPA allegations are allegations raised in the Oregon debt collection claim that OFB wrongfully attempted to foreclose on plaintiffs' property by causing a trustee's notice of sale to be filed in Clackamas County. Am. Compl. at ¶¶ 22, 27. In particular, plaintiffs allege that the foreclosure was wrongful because OFB did not have a beneficial interest in the trust deed, because the notice of sale falsely stated that Fennell had been appointed trustee by the beneficiary under the trust deed, and because the notice of sale falsely stated that plaintiffs had failed to make payments under the trust deed. *Id.*

Based on this, plaintiffs appear to suggest that any acts taken by OFB in pursuit of the foreclosure violated the FDCPA because OFB was attempting to collect a debt it was not owed. *See* 15 U.S.C. § 1692f(1) (listing as unfair practice under FDCPA the collection of any amount unless expressly authorized by agreement or permitted by law). The argument here is not a challenge to the amount owed, but a challenge to the lawful "owner" of the right to foreclose on the trust deed.

In support of this argument, plaintiffs contend that the assignment of the beneficial interest in the trust deed from OFSI to OFB is invalid because it was signed by an officer of OFB not OFSI, it was signed by an officer of OFB's and OFSI's parent corporation, it was forged, or it was backdated. *See* Ptlfs' Concise Stmt of Facts at ¶¶ 22–28.

In *Heinemann v. Jim Walter Homes, Inc.*, 47 F.Supp.2d 716 (D.W.Va.1998), aff'd, 173 F.3d 850 (4th Cir.1999), the court construed the pro se plaintiffs' complaint as attempting to bring a FDCPA claim over actions that had occurred during the foreclosure of their property. The court

found most of the allegations barred by the statute of limitations, but held that the publication of the notice of sale and the final trustee's sale itself had occurred within the statute of limitations. *Id.* at 722. But, the court held, because "the trustees were not collecting on the debt at that time, but merely foreclosing on the property pursuant to the deed of trust, these activities do not fall within the terms of the FDCPA. *See* 15 U.S.C. § 1692a(6)." *Id.*

■■■ I agree with the analysis in *Heinemann.* A "debt collector" under the FDCPA is a person who collects or attempts to collect debts. 15 U.S.C. § 1692a(6). A "debt" is defined in the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5).

Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.

■■■ An important point here is that with a trust deed, the trustee possesses the power of sale which may be exercised after a breach of the obligation for which the transfer in trust of the interest in real property is security. O.R.S. 86.710. Foreclosure by the trustee is not the en-

forcement of the obligation because it is not an attempt to collect funds from the debtor.

Thus, I agree with the conclusion in *Heinemann* that the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA. Accordingly, any actions taken by OFB in pursuit of the actual foreclosure may not be challenged as FDCPA violations. If OFB is found to have received the interest in the trust deed from OFSI "solely for the purpose of facilitating collection of such debt for another" and thus is considered a debt collector subject to the FDCPA, plaintiffs may maintain any FDCPA claims based on alleged actions by OFB in collecting a debt, but may not maintain any FDCPA claims based on alleged actions made in pursuit of the actual foreclosure. Any allegations that the foreclosure proceedings were wrongful because of an invalid assignment from OFSI to OFB are not properly brought under the FDCPA.[5]

C. Oregon Unfair Debt Collection Practices Act

■■■ Plaintiffs allege that OFB violated the Oregon Unfair Debt Collection Practices Act, O.R.S. 646.639–646.643, (OUDCPA), by attempting to collect a debt for additional attorney's fees or other fees not owed. Am. Compl. at ¶ 21. They also contend that OFB violated the OUDCPA by wrongfully commencing foreclosure of plaintiffs' property by causing a Trustee's Notice of Sale to be filed in the deed records of Clackamas County. *Id.* at ¶ 22.

As mentioned above, plaintiffs allege that commencement of foreclosure was

---

**5.** If the foreclosure process had not been aborted prior to sale, plaintiffs could possibly pursue a claim for wrongful foreclosure under Oregon's non-judicial foreclosure statutes based on the invalid assignment allegations.

Without an actual foreclosure, however, it may be that plaintiffs have no remedy for the alleged initiation of the foreclosure process by the wrong entity.

wrong because OFB did not have a beneficial interest in the trust deed, because the notice of sale falsely stated that Fennell had been appointed trustee by the beneficiary under the trust deed, and because the notice of sale falsely stated that plaintiffs had failed to make payments under the trust deed and that late charges, expenses, costs, trustees' fees, and attorney's fee were owed and secured by the trust deed.[6] *Id.* Finally, plaintiffs allege that OFB violated the OUDCPA by causing a sign that contained large, bold letters stating "URGENT NOTICE" to be placed on the front gate of plaintiffs' property. *Id.* at ¶ 23.

In support of their claims, plaintiffs rely on those portions of the OUDCPA which prohibit a debt collector from (1) attempting to or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist; (2) representing that an existing debt may be increased by the addition of attorney's fees, investigation fees, or any other fees or charges when such fees or charges may not legally be added to the existing debt; and (3) collecting or attempting to collect any interest or any other charges or fees in excess of the actual debt unless they are expressly authorized by the agreement creating the debt or expressly allowed by law. O.R.S. 646.639(2)(k), 646.639(2)(m), and 646.639(2)(n).

OFB argues that it is not liable under the OUDCPA because it only pursued the remedies available to it to collect the sums it was owed. OFB contends that because plaintiffs stopped making payments in January 2000 following their inadequate payoff tender, they were in default of their payment obligations and OFB had the right to foreclose its interest. OFB asserts that it was justified in seeking to collect all of the amounts it was owed and in instituting foreclosure proceedings on July 25, 2000. It further asserts that all of its efforts relating to providing proper notice of the foreclosure were not in violation of the OUDCPA.

In response, plaintiffs argue that they tendered more money than was owed and thus, OFB violated the OUDCPA because it refused to accept plaintiffs' tender, it reported negatively on plaintiffs' credit, it started to foreclose on the home, and caused a sign to be placed on plaintiffs' gate telling plaintiffs' neighbors that their property was in foreclosure.

The validity of most of the allegations in this claim turns on whether plaintiffs actually owed more to OFB than they tendered in their attempted payoff in January 2000.

---

6. Plaintiffs make one other allegation which I do not consider at this time. Plaintiffs allege that OFB's "threat, as alleged in paragraph 6 above, is an unlawful debt collection practice, in violation of ORS 646.639(2)(k)." Am. Compl. at ¶ 20. But, paragraph six contains no discernable threat. The paragraph states that "[u]nder the terms of the trust deed, [OFB] agreed and promised to request a reconveyance of the trust deed to Plaintiffs upon receipt of full payment of the debt secured by the trust deed." *Id.* at ¶ 6. It is possible that plaintiffs intended to refer to paragraph seven instead of paragraph six. Paragraph seven alleges that in May 1999, when plaintiffs inquired of OFB as to the balance of their mortgage, they were told that the mortgage was current and no additional charges were owed. Am. Compl. at ¶ 7. They further allege that at the same time, OFB told plaintiffs that it made no difference whether plaintiffs were in default because OFB could report anything it wanted regarding plaintiffs so that plaintiffs could not get a loan from anyone else. *Id.* This statement is repeated in plaintiffs' concise statement of facts with a citation to Hulse's affidavit as support. Pltfs' Concise Stmt at ¶ 4. But, Hulse's affidavit is silent regarding this allegation. Because the precise nature of the allegation raised by paragraph twenty in the Amended Complaint is unclear or not supported, I do not consider it.

Based on the discussion in connection with the breach of contract claims, summary judgment on this claim is inappropriate because there are outstanding issues of fact related to whether plaintiffs owed less or more than they tendered to OFB. To the extent plaintiffs' claims depend on determining whether they tendered the proper amount owed to OFB, I deny OFB's motion for summary judgment on the OUDCPA claims.

■ As with the FDCPA claim, plaintiffs suggest that even if they tendered less than the amount owed and were properly adjudged to be in default, they still have a claim under the OUDCPA based on the alleged invalidity of any foreclosure proceedings orchestrated by OFB because OFB did not have the beneficial interest in the trust deed at the time it assigned Fennell to be the successor trustee and began foreclosing on the property. Plaintiffs argue that any acts taken by OFB in pursuit of the foreclosure violated the OUDCPA because OFB was attempting to enforce a right or remedy with knowledge that the right or remedy did not exist, or was attempting to collect a debt it was not owed. *See* O.R.S. 646.639(2)(k).

I reject this argument because, as with the FDCPA, I conclude that foreclosing on a trust deed is not the collection of a debt under the OUDCPA. Thus, any allegations of wrongful foreclosure based on an alleged invalid assignment are not assertable as OUDCPA claims.

Under the OUDCPA, a debt "means any obligation or alleged obligation arising out of a consumer transaction." O.R.S. 646.639(1)(e). A debt collector is "any person who by any direct or indirect action, conduct or practice, enforces or attempts to enforce an obligation that is owed or due to any commercial creditor, or alleged to be owed or due to any commercial creditor, by a consumer as a result of a consumer transaction." O.R.S. 646.639(1)(g). As

with the FDCPA, foreclosing on a trust deed is not the enforcement of an obligation because it is not an attempt to force the debtors to pay the money owed. Thus, plaintiffs' claims against OFB arising out of any alleged wrongful foreclosure, are not actionable.

### D. Libel Claim

Plaintiffs allege that OFB libeled them by making the following statements which plaintiffs allege were false and defamatory and published by OFB with knowledge of their falsity or with reckless disregard of their truth or falsity: (1) the publication of the Trustee's Notice of Sale in one or more newspapers of general circulation in Oregon; and (2) the recording, in January 2000 and thereafter, with national credit reporting agencies that plaintiffs were delinquent in the payment of their mortgage and that the property was under foreclosure.

OFB argues that this claim fails as a matter of law because the contents of the alleged statements were true. However, this argument also turns on whether plaintiffs owed more than they tendered. Because of outstanding issues of fact, I cannot grant summary judgment to OFB on the libel claim based on this argument.

■ Alternatively, regardless of whether plaintiffs' allegations are true, OFB argues that its actions were absolutely privileged because they were part of a quasi-judicial foreclosure proceeding. Oregon recognizes an absolute privilege to statements made by parties, witnesses, or affiants during or incident to a judicial proceeding. *In re Smith*, 316 Or. 55, 60, 848 P.2d 612, 614 (1993). The privilege extends to quasi-judicial proceedings. *Id.* The privilege "embraces anything that may be relevant and pertinent, . . . and all doubt should be resolved in favor of its relevancy or pertinency." *Leveque v.*

*Paulson,* 126 Or.App. 12, 16, 867 P.2d 516, 517 (1994) (citation omitted).

Various proceedings have been recognized as constituting judicial or quasi-judicial proceedings. *See, e.g., Ducosin v. Mott,* 292 Or. 764, 642 P.2d 1168 (1982) (investigation by county medical examiner); *Moore v. West Lawn Mem'l Park,* 266 Or. 244, 512 P.2d 1344 (1973) (licensing proceedings before the state board of funeral directors); *Ramstead v. Morgan,* 219 Or. 383, 347 P.2d 594 (1959) (privilege extends to proceedings before administrative bodies including disciplinary proceedings conducted by the Oregon State Bar).

OFB argues that although it was proceeding with a non-judicial foreclosure, such a proceeding is equivalent to a quasi-judicial proceeding. OFB notes that the non-judicial foreclosure proceedings were established by the Oregon Legislature as an alternative to the more expensive and time consuming process of judicial foreclosures and they are labeled non-judicial in the statute to distinguish them from "judicial" foreclosure proceedings. Nonetheless, OFB contends, the non-judicial foreclosure proceedings should be treated as quasi-judicial for purposes of evaluating the absolute privilege because the proceedings have many of the same due process protections of service and opportunity to appear that exist in judicial proceedings.

In response, plaintiffs contend that absolute privilege should be reserved to statements that have been made preliminary to or in the course of quasi-judicial proceedings before administrative bodies. They argue that there is nothing quasi-judicial about a non-judicial foreclosure.

■ I need not resolve the issue of whether absolute privilege applies to statements made in the context of a non-judicial foreclosure. Rather, OFB is entitled to rely on the concept of a qualified or conditional privilege and is entitled to summary judgment on the libel claim on that basis.

■ A statement that is otherwise defamatory "is privileged if it is uttered under such circumstances that the law grants immunity to the speaker." *Wattenburg v. United Medical Lab., Inc.,* 269 Or. 377, 379, 525 P.2d 113, 114 (1974). "A statement is conditionally privileged if: (1) it was made to protect the interests of defendants; (2) it was made to protect the interests of plaintiff's employer; or (3) it was on a subject of mutual concern to defendants and the person to whom the statement was made." *Id.* at 380, 525 P.2d at 114. If statements are conditionally privileged, the defendant is immune from liability as a matter of law unless he or she has acted in a way to cause him or her to lose the privilege. *Bendl v. Parks,* 164 Or.App. 699, 704, 994 P.2d 802, 805 (2000).

■ To overcome the qualified privilege, plaintiff must produce evidence "of some kind of improper motive on defendant's part." *Wattenburg,* 269 Or. at 380, 525 P.2d at 114; *see also Walsh v. Consolidated Freightways, Inc.,* 278 Or. 347, 356, 563 P.2d 1205, 1210 (1977) (burden of proving an abuse of the qualified privilege rests upon the plaintiff). A conditional privilege to utter a defamatory statement

> may be lost if the speaker does not believe that the statement is true or lacks reasonable grounds to believe that it is true; *if it is published for a purpose other than that for which the particular privilege is given;* if the publication is made to some person not reasonably believed to be necessary to accomplish the purpose; or if the publication includes defamatory matter not reasonably believed to be necessary to accomplish the purpose.

*Bendl,* 164 Or.App. at 704, 994 P.2d at 805 (internal quotation omitted).

Here, the alleged libelous statements made by OFB were clearly made to protect OFB's interests. Thus, a conditional

privilege attaches to them. Plaintiffs fail to show that OFB abused its privilege. The evidence does not suggest that (1) OFB published the statements for any reason other than to secure their investment and proceed with the non-judicial foreclosure; (2) the publication was made to some person not reasonably believed to be necessary to accomplish that purpose; or (3) the statements included defamatory matter unrelated to the purpose.

Most importantly, the evidence does not indicate that OFB did not believe its statements were true or lacked reasonable grounds to believe the truth of the statements. The evidence shows that the parties had, and continue to have, a good faith dispute as to the amount owed OFB. Because OFB's position, as well as plaintiffs', is reasonable based on the evidence, plaintiffs have not created an issue of fact as to any kind of improper motive on OFB's part in making these statements. Therefore, even if the statements were defamatory, they were conditionally privileged and OFB is entitled to summary judgment on the libel claim.

### E. Invasion of Privacy

Plaintiffs allege that OFB invaded their privacy by reporting false information on plaintiffs' credit, by recording the trustee's notice of sale and advertising information in the trustee's notice of sale in a newspaper of general circulation, and posting the sign on plaintiffs' property. Am. Compl. at ¶ 39. Plaintiffs allege that these acts invaded their privacy because the publicity placed them in a false light in the public eye and publicized private information about them.

▆▆▆ The elements of a false light invasion of privacy claim are as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

> (a) the false light in which the other was placed would be highly offensive to a reasonable person, and

> (b) the actor has knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

> The tort of false light is akin to the tort of defamation in that it is based on statements about a person that lead others to believe something about that person that is false.

*Phillips v. Lincoln County Sch. Dist.*, 161 Or.App. 429, 434, 984 P.2d 947, 950 (1999) (internal quotation omitted).

OFB argues that plaintiffs' invasion of privacy claim fails for three reasons. First, OFB contends that the information was true. As indicated above in connection with the breach of contract, debt collection, and libel claims, there are issues of fact concerning the correct amount owed and thus, summary judgment on this basis is not warranted.

▆▆ Second, OFB contends that any invasion in this case was not "highly offensive" as required to sustain the claim. Third, OFB contends that any absolute or conditional privilege applicable to the defamation claim is equally applicable to the invasion of privacy claim. Because I agree with OFB regarding the privilege argument, I do not decide if the dissemination of information in connection with a non-judicial foreclosure, is capable of placing one in a "highly offensive" false light.

In a 1983 case, the Oregon Court of Appeals held that the absolute privilege to publish defamatory matter applies "to the publication of any matter that is an invasion of privacy, including material that raises a 'false light' claim." *Lee v. Nash,*

65 Or.App. 538, 542, 671 P.2d 703, 706 (1983).

■ Although no Oregon case has expressly held that the conditional privilege available in defamation actions equally applies in false light invasion of privacy claims, other courts have so recognized. *See, e.g., West v. Media Gen. Convergence, Inc.,* 53 S.W.3d 640, 648 (Tenn.2001) (absolute and conditional privileges apply to false light invasion of privacy claim); *Bagwell v. Peninsula Reg'l Med. Ctr.,* 106 Md.App. 470, 514, 665 A.2d 297, 319 (1995) (defendant entitled to judgment as a matter of law in false light claim where statement protected by qualified privilege); *Hines v. Arkansas La. Gas Co.,* 613 So.2d 646, 658 (La.Ct.App.1993) (qualified privilege applies to false light invasion of privacy claim). I agree with OFB that the absolute and conditional privileges available in defamation actions apply to false light claims. For the reasons explained in connection with the libel claim, I grant summary judgment to OFB on the invasion of privacy claim because the statements at issue were conditionally privileged.

F. Specific Performance

■ In this claim, plaintiffs allege that they have performed all conditions precedent pursuant to their agreement with OFB. Am. Compl. at ¶ 32. They contend that they are willing, ready, and able to pay the true amount owed under the mortgage. *Id.* They assert that the court should declare the amount owed under the mortgage and order OFB to cause the reconveyance of the trust deed upon payment of that sum. *Id.* at ¶ 33.

Because issues of fact remain as to whether plaintiffs tendered the full amount of money owed to OFB in their attempted payoff in January 2000, summary judgment on this claim, to any party, is inappropriate.

G. Declaratory Relief

In this claim, plaintiffs contend that the amount they tendered to OFB on January 24, 2000, was the correct amount owed and was the amount demanded by OFB. Am. Compl. at ¶ 43. Plaintiffs state that a judicable controversy exists involving an actual controversy. *Id.* at ¶ 44. They assert that the court should declare the interests of the parties and the amounts owed under the note and trust deed. *Id.*

OFB and OFSI agree with plaintiffs that there is a dispute about the amount owed by plaintiffs. They assert that there is no dispute that the last regular payment made by plaintiffs was on December 10, 1999. They request that I declare that plaintiffs owe OFB the amount that OFB asserts it is owed, including interest from December 10, 1999 to date.

■ Again, as with many of the claims in this case, because there are issues of fact regarding the amount owed by plaintiffs to OFB, summary judgment on the declaratory relief claim is inappropriate.

In summary, I grant summary judgment to OFB on the account stated, libel, and invasion of privacy claims. I deny summary judgment to OFB on the breach of contract, specific performance, and declaratory relief claims. I deny summary judgment to OFB on the FDCPA and OUDCPA claims except that I grant summary judgment to OFB on any portions of those claims based on acts taken as part of the foreclosure.

II. Fennell and RCF's Motion for Summary Judgment

The claims against Fennell and RCF are (1) an FDCPA claim; (2) an OUDCPA claim; (3) a libel claim; (4) an invasion of privacy claim; and (5) the declaratory relief claim. For the reasons explained above, I deny summary judgment to Fen-

nell and RCF on the declaratory relief claim because there are outstanding issues of fact regarding what amount is actually owed to OFB. Also as explained above, I grant summary judgment to Fennell and RCF on the libel and invasion of privacy claims on the basis of conditional privilege. Thus, only the debt collection claims require discussion.

### A. FDCPA Claim

In the Amended Complaint, plaintiffs recite only one act by RCF and Fennell as violative of the FDCPA. Plaintiffs contend that on or about November 2, 2000, Fennell and RCF sent plaintiffs a letter advising them that their property was scheduled to be sold at a trustee's sale on December 1, 2000, and had to be vacated before December 11, 2000. Am. Compl. at ¶ 28. Plaintiffs contend that Fennell and RCF sent this letter to plaintiffs despite the fact that Fennell and RCF knew that plaintiffs were represented by an attorney, and despite the fact that Fennell and RCF knew the name, address, and phone number of plaintiffs' attorney. *Id.* Plaintiffs allege that this act violated 15 U.S.C. § 1692c(a). Plaintiffs also allege that before the November 2, 2000 letter, RCF and Fennell contacted plaintiffs through telephone calls and correspondence despite knowing that plaintiffs were represented by an attorney. *Id.*

In addition, in connection with their OUDCPA claim but incorporated by reference into the FDCPA claim, plaintiffs allege that Fennell and RCF violated the statute by wrongfully commencing foreclosure by causing a trustee's notice of sale to be filed in the deed records of Clackamas County; and by placing on the front gate of the property, a sign stating "URGENT NOTICE" and which instructed the property's occupants to contact "Chris at 241-0636" to arrange for documents regarding the foreclosure of the property. Am. Compl. at ¶¶ 22, 23.

RCF and Fennell argue that the FDCPA does not apply because pursuing a foreclosure is not the collection of a debt under the FDCPA. For the reasons discussed above in connection with the FDCPA claim against OFB, I agree with RCF and Fennell. Thus, the actions alleged to have been taken by RCF and Fennell as part of the foreclosure may not be challenged as FDCPA violations.

Furthermore, I agree with RCF and Fennell that the FDCPA does not require independent verification of the validity of the debt, and imposes no higher standard on a law firm acting to collect a debt. *See Jenkins v. Heintz*, 124 F.3d 824, 833 (7th Cir.1997) (lawyers and lay debt collectors on equal footing under the FDCPA); *Ducrest v. Alco Collections, Inc.*, 931 F.Supp. 459, 462 (M.D.La.1996) (debt collector should be able to rely on representation and implied warranty from its client that the amount was due; FDCPA does not require an independent investigation of the information provided by clients when a debt collector tries to collect a debt). Thus, even if plaintiffs were not actually in default because they tendered the proper amount of money to OFB in the attempted payoff, there can be no FDCPA claim against RCF and Fennell for actions taken by RCF and Fennell toward plaintiffs that complied with the FDCPA but which may, in the end, prove to have been an improper foreclosure because there was no default.

Additionally, RCF and Fennell argue that an FDCPA claim cannot be based on actions taken pursuant to Oregon's non-judicial foreclosure statutes. I agree. Fennell and RCF do not dispute that a letter containing information regarding the foreclosure sale was sent to plaintiffs. But, they contend that the letter was required under Oregon non-judicial foreclosure statutes. *See* O.R.S. 86.740(1)(a) (no-

tice of sale must be given to the grantor in the trust deed). A 1999 Federal Trade Commission report indicates that the "cease communication" provision in section 1692c(a) of the FDCPA does not prevent collectors or creditors from filing suit against the consumer. Exh. 157 at p. 3. I agree with RCF and Fennell that pursuit of legal remedies, such as non-judicial foreclosure statutes, do not violate the cease communications rule of the FDCPA.

Accordingly, because (1) foreclosing on a trust deed is not a debt as defined in the FDCPA; (2) any actions taken by RCF and Fennell based on OFB's representation that plaintiffs were in default, even if that representation later proves erroneous, are not actionable under the FDCPA if the actions complied with FDCPA procedures; and (3) any actions by RCF and Fennell taken pursuant to the Oregon non-judicial foreclosure statutes are not actionable under the FDCPA, RCF and Fennell are entitled to summary judgment on the FDCPA claim.

### B. OUDCPA Claim

Plaintiffs allege that Fennell and RCF violated the OUDCPA in two ways. First, they allege that Fennell and RCF violated the statute by wrongfully commencing foreclosure of plaintiffs' property in that OFB no longer had a beneficial interest in the trust deed, the notice of sale filed in the records of Clackamas County falsely stated that Fennell had been appointed trustee by the beneficiary under the trust deed, and the notice falsely stated that plaintiffs had failed to make payments under the trust deed and that late charges, expenses, costs, trustee's fees, and attorney's fees were owed and secured by the trust deed. Am. Compl. at ¶ 22. Second, they allege that RCF and Fennell caused the "URGENT NOTICE" sign to be placed on their property in September 2000. *Id.* at ¶ 23.

Fennell and RCF first rely on O.R.S. 646.643 which provides:

A debt collector who is subject to and in compliance with the requirements of the Fair Debt Collection Practices Act … shall also be considered to be in compliance with the requirements of ORS 646.639 [outlining violations of OUDC-PA].

O.R.S. 646.643. However, this provision does not assist RCF and Fennell because of my conclusion that they are not subject to the FDCPA. Nonetheless, for the reasons explained in connection with the OUDCPA claims against OFB, and for the reasons explained in connection with the FDCPA claims against RCF and Fennell, RCF and Fennell are entitled to summary judgment on the OUDCPA claims.

First, as previously discussed, any claims arising out of actions taken in connection with the foreclosure are not actionable against RCF and Fennell as OUDCPA claims because foreclosing on a trust deed is not acting to collect a debt under the OUDCPA. Second, any acts taken by RCF and Fennell in conformance with the OUDCPA and based on OFB's representation that plaintiffs were in default, are not actionable under the OUDC-PA if the default is later proved erroneous, because RCF and Fennell had no independent obligation to verify the alleged debt. Third, any actions taken in compliance with the Oregon non-judicial foreclosure statutes are not actionable under the OUDCPA for the same reason that they are not actionable under the FDCPA. I grant summary judgment to RCF and Fennell on the OUDCPA claims.

In summary, I deny summary judgment to Fennell and RCF on the declaratory relief claim because there are outstanding issues of fact regarding what amount is actually owed to OFB. I grant summary judgment to RCF and Fennell on the libel,

invasion of privacy, and state and federal debt collection practices claims.

### III. Plaintiffs' Cross Motion for Summary Judgment

Plaintiffs move for summary judgment on all of their claims and on "[d]efendants' alleged defenses on bona fide error." Pltfs' Resp. and Cross Mtns at p. 2. For the reasons explained above, I deny plaintiffs' motion as to their claims because as to some claims, there are outstanding issues of fact as to the amount plaintiffs owed OFB, and as to other claims, defendants are entitled to summary judgment.

 The FDCPA's bona fide error defense provides that

[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). The only defendant who appears to assert the defense is OFB. *See* Am. Answer of OFB and OFSI at ¶ 34.

I agree with OFB that there is insufficient evidence on this record to grant summary judgment to plaintiffs on the bona fide error defense. OFB's exhibits show that it maintains a "Comments Log" and a "Transaction History" on its accounts. Exh. 110. This shows that OFB keeps some records of account activity. Presumably, the records are intended to keep the account current and present an accurate record of all payments received and charges owed. This is enough to suggest that OFB maintains procedures to avoid errors in debt calculations.

Plaintiffs present no evidence whatsoever of OFB's record keeping or that OFB acted intentionally in making any miscalculation. Thus, at this point, construing the evidence in favor of non-moving party

OFB, the evidence suggests that OFB maintains some records from which one can reasonably infer are meant to accurately keep track of the debt. As a result, plaintiffs are not entitled to summary judgment on the bona fide error defense raised by OFB.

### CONCLUSION

I grant in part and deny in part OFB's and OFSI's motion for summary judgment (# 102, 117), I grant in part and deny in part RCF's and Fennell's motion for summary judgment (# 98), and I deny plaintiffs' motion for summary judgment (# 112).

IT IS SO ORDERED.