Jerome E. **HEINEMANN** and Patricia A. Heinemann, Husband and Wife, Plaintiffs,

v.

**JIM WALTER HOMES, INC.,** A Florida corporation, Mid–State Trust IV, A Delaware Business Trust, Samuel A. St. Clair, Individual and Official Capacity, and William D. Levine, Individual and Official Capacity, Defendants.

No. Civ.A.2:98CV34.

United States District Court, N.D. West Virginia.

Nov. 13, 1998.

Jerome E. Heinemann, Patricia A. Heinemann, Dunmore, W VA, pro se.

William David Levine, St. Clair and Levine, Huntington, W VA, for Defendants.

### *ORDER*

MAXWELL, District Judge.

Plaintiffs, proceeding *pro se*, allege that the defendants violated their procedural due process rights and transgressed established substantive law by wrongfully foreclosing on property owned by plaintiffs in Pocahontas County, West Virginia. On June 8, 1998, the defendants filed a Motion to Dismiss, supported by a memorandum of law and several exhibits. Plaintiffs filed a memorandum in opposition to the motion to dismiss which also included numerous exhibits. Thereafter, the defendants filed a reply brief which contained several additional exhibits.

By Order entered August 26, 1998, the Court determined that the motion to dismiss would be construed as a Motion for Summary Judgment and considered pursuant to Rule 56, Federal Rules of Civil Procedure. Noting that the parties had already presented an abundance of material in support of and in opposition to the motion, the Court, nevertheless, provided the parties with notice and an additional

opportunity to present any material made pertinent to the motion by Rule 56 of the Federal Rules of Civil Procedure.

On September 11, 1998, plaintiffs filed a supplemental memorandum of law in opposition to the motion for summary judgment. The Court has reviewed all matters of record and finds that the matter is mature for disposition and that summary judgment in favor of defendants is appropriate.

From the text of Rule 56(c) of the Federal Rules of Civil Procedure, it is clear that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Motions for summary judgment impose a difficult standard on the movant; for, it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Federal Deposit Ins. Corp.*, 906 F.2d 972, 974 (4th Cir.1990).

However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To withstand such a motion, the nonmoving party must offer evidence from which "a fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather than encourage mere speculation. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985). It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The material facts are not in dispute although the parties disagree as to the inferences to be drawn from some of the facts and the relative importance of certain facts to the claims alleged by plaintiffs in this lawsuit. These disagreements do not, however, preclude summary judgment.

On or about August 15, 1990, plaintiffs husband and wife entered into a building contract with defendant Jim Walter Homes, Inc. ("JWH"), in which JWH agreed to construct and finance a residence on plaintiffs' property in Pocahontas County, West Virginia. The purchase price of $78,070.00 was secured by a deed of trust.[1]

Construction neared completion in March 1991; however, between March 1991 and May 1991, plaintiffs expressed considerable dissatisfaction for the quality of certain building materials, incomplete work, and construction deficiencies. Plaintiffs further allege that these construction deficiencies ultimately led to severe structural defects in the floors and walls.

At about this same time, plaintiffs began to suffer financial hardships. They had anticipated receiving a loan from a local bank for the purpose of purchasing building supplies for their home. The supplies were purchased, delivered, and used; however, the loan was ultimately not approved.[2] In addition, plaintiffs' T-shirt manufacturing business closed.

---

**1.** Plaintiffs owned approximately 104.25 acres of real estate in Pocahontas County, recorded as three adjacent tracts: 83 acres in Deed Book 138 at page 176; 21 acres in Deed Book 138 at page 176; and .25 acre in Deed Book 141 at page 81. Two of the three tracts, totaling 21.25 acres, is encompassed in the deed of trust.

**2.** Although unimportant for purposes of the instant litigation, plaintiffs initiated a legal

In the Fall of 1991, plaintiffs consulted with counsel regarding possible bankruptcy proceedings. Although plaintiffs and their counsel communicated with each other regarding bankruptcy and prepared various bankruptcy documents in 1991 and 1992, it is apparent that a Chapter 13 petition was not filed on behalf of plaintiffs until January 15, 1993.

By this time, plaintiffs were in serious default of their obligation to make payments to defendant JWH. By letter dated October 29, 1992, a notice of default was sent to plaintiffs by defendant Levine. Plaintiffs did not cure the default. By letter dated December 21, 1992, a Notice of Trustees Sale was sent to plaintiffs by defendant Levine. The sale was scheduled for January 15, 1993. As previously noted, plaintiffs, represented by counsel, filed their Chapter 13 petition on January 15, 1993, in the United States Bankruptcy Court for the Southern District of West Virginia.

On January 18, 1993, defendant JWH filed a Motion for Relief from the Automatic Stay. In its motion, defendant JWH represented that it had purchased the property at the Trustees Sale on January 15, 1993, prior to learning that plaintiffs had filed their Chapter 13 petition. Defendant JWH further represented that the Trustees had not executed a deed nor filed a report of sale in light of the pending bankruptcy proceeding.

On February 17, 1993, the parties appeared in the Bankruptcy Court for a hearing on defendant JWH's Motion for Relief from Automatic Stay. At that time, the parties announced to the Court that they had agreed to compromise the motion and jointly moved the Bankruptcy Court to enter an Order effectuating that compromise. By Order entered April 26, 1993, pursuant to the agreement of the parties, the Bankruptcy Court ordered:

1. That Jim Walter Homes will reinstate the debtors' account as being current with respect to monthly payments. The debtors shall pay the balance of their obligation to Jim Walter Homes, Inc., in accordance with the note and deed of trust executed in connection therewith, that being the sum of $669.00 per month, which payments are due on the 15th day of each month, until the balance of their obligation to Jim Walter Homes is paid in full.

2. The existing note and deed of trust will remain in full force and effect and the debtors will comply with each and every term thereof including but not limited to provisions relating to the payment of taxes and insurance.

3. The debtors' arrearage in insurance payments, that being the sum of $1,826.00, shall be re-paid at the rate of $20.00 per month.

4. The automatic stay is hereby lifted. In the event that the debtors default in any of their obligations to Jim Walter Homes, Inc., Jim Walter Homes may take whatever action is permitted pursuant to the laws of the State of West Virginia, to initiate proceedings to cause its Trustees to sell that property as provided in the deed of trust.

5. Before taking any action in the event of a default, Jim Walter Homes will provide debtors with a notice of their right to cure that default as provided by § 46A–2–106, a copy of which should also be sent to debtors' attorney, George L. Lemon.

Plaintiffs do not dispute that, subsequent to the execution of this agreement, they once again defaulted on their obligation to make monthly payments to JWH. By letter dated November 5, 1993, defendant Levine notified plaintiffs that they were five months in arrears and owed other sums pursuant to the bankruptcy agreement. A copy of this letter was sent to plaintiffs' counsel. Plaintiffs did not cure the default.

action against the bank in the Circuit Court of Pocahontas County, West Virginia.

By letter date November 15, 1993, a Notice of Trustees Sale was sent to plaintiffs by defendant Levine. A copy of the Notice was sent to plaintiffs' counsel. The sale was scheduled for December 10, 1993. At that time, the Trustees sold the property to defendant JWH. A deed was executed on December 13, 1993. In February 1994, defendants filed suit in the Circuit Court of Pocahontas County, West Virginia, to evict plaintiffs from the property.

In March 1994, plaintiffs, represented by counsel, began to negotiate with JWH to re-purchase the property. The record before this Court reflects that JWH would only finance the purchase for plaintiffs if plaintiffs could provide clear title to the third parcel of real estate owned by plaintiffs (consisting of 83 acres) and grant JWH a first lien on said parcel which would secure a new deed of trust. Plaintiffs undertook efforts to obtain clear title to this third parcel of property; however, it was not until August 1994 that plaintiffs succeeded.

In the meantime, JWH proceeded in the Circuit Court of Pocahontas County. On August 15, 1994, the circuit court heard argument on JWH's motion for summary judgment. Plaintiffs were present in person and represented by counsel. The circuit court granted the motion and ordered plaintiffs to vacate the premises no later than September 15, 1994. The state court directed the Clerk to issue a writ of possession to be executed by the Sheriff of Pocahontas County no sooner then September 16, 1994.

Either immediately before or after the circuit court proceedings, plaintiffs finalized an agreement with JWH to re-purchase the property for $68,000.00. They were not represented by counsel during these negotiations. The purchase price was secured by a deed of trust, which included all three tracts of plaintiffs' 104.25 acres, and the sales contract expressly provided that plaintiffs were releasing JWH from any claims relating to the construction of the dwelling:

Buyer further acknowledges that the purchase price which has been negotiated reflects the existence of certain construction defects and the possibility that others may exist or hereafter become known. Accordingly, buyers hereby release and discharge Jim Walter Homes, Inc. from any claims or causes of action arising in whole or in part as a consequence of any defects or conditions in the house or real property, and/or any appurtenances thereto being purchased by buyers.

Plaintiffs contend that they did not read the documents and that they were coerced into signing the documents upon threat of eviction.

By letter dated September 6, 1995, a notice of default was sent to plaintiffs by defendant Levine. Plaintiffs were in arrears in the amount of $4,155.89. Plaintiffs cured the default by borrowing the money from a local bank.

By letter dated April 17, 1996, a notice of default was sent to plaintiffs by defendant Levine. Plaintiffs were in arrears in the amount of $3,338.40. Plaintiffs did not cure the default. By letter dated April 30, 1996, a Notice of Trustees Sale was sent to plaintiffs by defendant Levine. The sale was scheduled for May 22, 1996. By letter dated May 14, 1996, plaintiffs were advised by defendant Levine that the balance of their account had been accelerated ($71,034.65) and would have to be paid in full prior to the Trustees' sale to avoid foreclosure. The property was sold at the Trustees' sale to defendant Mid State Trust IV for $57,000.00.

Defendant Mid State Trust IV initiated legal action in the Circuit Court of Pocahontas County, West Virginia, to evict plaintiffs and to recover the deficiency. Plaintiffs answered the complaint and filed a counterclaim against the defendant which suggested that the default occurred as a result of the January 1996 flood in the Greenbrier River Basin which disrupted voucher payments provided by the West

Virginia Department of Health and Human Resources ("WVDHHR").[3] Plaintiffs also contended that the May 22, 1996 Trustees Sale was void because the deed of trust required legal notices to be published once a week for three consecutive weeks and defendants had published the notice of sale for only two consecutive weeks.

To rectify the error in publication, a Notice of Trustees Sale was sent to plaintiffs on April 17, 1997. The notice was published for three consecutive weeks. A public auction occurred on May 21, 1997, at which time the property was sold to defendant Mid State Trust IV for $65,000.00. The circuit court heard argument on Mid-State Trust IV's partial motion for summary judgment via telephone conference call on July 7, 1997. Plaintiffs were represented by counsel, who submitted affidavits from plaintiffs and supporting documents on July 16, 1997.

By Order entered November 25, 1997, the state trial judge declared Mid State Trust, IV, to be the rightful owner of the real estate and ordered plaintiffs to deliver possession of the real estate within thirty (30) days. Plaintiffs filed a Notice of Intent to Appeal, and in March 1998, filed a Petition for Appeal in the Supreme Court of Appeals of West Virginia. It would appear that the matter is still pending on appeal. Plaintiffs filed the instant action on April 16, 1998.

In the instant complaint, Count One is styled as Breach of Contract. Plaintiffs allege that defendant JWH began a pattern of misrepresentation, unfair, predatory, and deceptive business practices, in the conduct of its business affairs with plaintiffs, by "never completing construction of subject house, as per building contract, dated 15 August 1990, and said house subsequently later sustained detrimental water damage rendering house currently unfit for sanitary living, or eligible to meet Housing & Urban Development (HUD)

standards." Plaintiffs further claim that defendants coerced them into a second agreement and engaged in deceptive practices by requiring plaintiffs to re-purchase the property in August 1994 and to waive any claims or causes of action arising in whole or in part as a consequence of any defects or conditions in the house or real property.

■ While plaintiffs may have had, at one time, a cognizable cause of action against defendant JWH for breach of the August 15, 1990 building contract, any such claim ceased with the August 15, 1994 bill of sale which reflects that plaintiffs re-purchased the property, expressly acknowledged that the property had construction defects, and released JWH from any claims relating to the construction of the dwelling. To the extent that plaintiffs claim they were coerced into the second agreement, exercising rights under a deed of trust and seeking to evict after foreclosure do not constitute coercion or fraud which could make the second agreement voidable. Defendants were merely exercising their legal rights under the deed of trust. Plaintiffs agreed to the terms of the second agreement to avoid a lawful eviction from premises they no longer owned, and, in fact, received valuable consideration for their release of any potential construction claims. Plaintiffs re-purchased the home for $10,000.00 less than the original purchase price and lowered their monthly mortgage payment by nearly $100.00 as a result of the August 15, 1994 agreement. Defendants are entitled to summary judgment on Count One.

Count Two is styled as Breach of Implied Covenant of Good Faith and Fair Dealing. Although the claim is somewhat difficult to decipher, the Court must liberally construe pro se pleadings. It would appear that plaintiffs are arguing that defendants, through a pattern of deceptive

---

**3.** The records of plaintiffs' account with JWH reflect that plaintiffs did not pay their portion of the mortgage payment during the time period after the flood and were already in arrears prior to the January 1996 flood.

and fraudulent acts, committed unfair debt collection practices which deprived plaintiffs of "equal protection under the law, and denied your Plaintiffs' redemptive and civil rights."

■ Although not expressly raised in this particular count, plaintiffs may be attempting to raise a claim under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1601–1693r. However, the statute of limitations relating to violations of the FDCPA is one year. 15 U.S.C. § 1692k(d). As can be seen from the recitation of the undisputed facts, the only activity which occurred after April 17, 1997, was the corrected publication of the notice of sale and the final trustees sale. Since the trustees were not collecting on the debt at that time but merely foreclosing on the property pursuant to the deed of trust, these activities do not fall within the terms of the FDCPA. *See*, 15 U.S.C. § 1692a(6).

■ Moreover, to the extent that plaintiffs seek to raise a common law claim for breach of implied covenant of good faith and fair dealing under state law, these issues have already been litigated in the counterclaim filed by plaintiffs in the Circuit Court of Pocahontas County, West Virginia. The Circuit Court ruled that the trustees complied with all legal requirements in connection with the sale. The doctrines of res judicata and collateral estoppel preclude plaintiffs from re-litigating these issues in this Court.[4] Plaintiffs' Petition for Appeal is presently pending in the West Virginia Supreme Court of Appeals—the proper forum for further litigation of questions which have already been resolved in state court.

Count Three, styled as "Negligence" suffers from a similar weakness. Although it is unlikely that Count Three raises a cognizable cause of action, to the extent that a cognizable cause of action could be construed, the claim has already been litigated in state court. Therefore, defendants are entitled to summary judgment on Count Three.

In Count Four, which is styled "Tortious Behavior & Interference," plaintiffs allege that defendants Levine and St. Clair failed to restore plaintiffs as legal owners of the subject property even though said defendants knew that plaintiffs qualified for a Federal Emergency Management Administration Mortgage or Rental Assistance (FEMA/MRA). Once again, these issues were raised in the state court, and plaintiffs are precluded from re-litigating these claims in this Court.

■ Moreover, defendants had no legal obligation to wait for plaintiffs to obtain government assistance to pay their mortgage. Plaintiffs had a history of being unable to meet their mortgage responsibilities, and, on more than one occasion, defendants negotiated with plaintiffs to avoid foreclosure and/or eviction. Although the January 1996 flood was an unfortunate occurrence, plaintiffs were in arrears prior to the flood and had submitted several personal checks to JWH which were returned for insufficient funds. Defendants had no legal burden to ascertain why plaintiffs were unable to meet their monthly payments, to negotiate with plaintiffs prior to foreclosure, or to suspend foreclosure proceedings while FEMA considered plaintiffs' assistance application. Although plaintiffs may think defendants' actions were heavy-handed, the actions were not unlawful.

■ Count Five, styled "Violation of Civil Rights," is brought pursuant to 42 U.S.C. § 1983, and alleges that defendants deprived plaintiffs of property without due

---

4. "*Claim preclusion* prevents a party from suing on a claim which has been previously litigated to a final judgment by that party or that party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action. *Issue preclusion* prevents relitigation of issues actually litigated and necessary for the outcome of the prior suit, even if the current action involves different claims." 18 Moore's Federal Practice, § 131.10[1][a] (Matthew Bender 3d ed.).

process of law. Section 1983 of Title 42 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

It is now well recognized that, in any § 1983 action, the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

Accepting the allegations of Count Five of the complaint as true for purposes of this preliminary inquiry, it is clear that the first prong is not satisfied. Defendants are not amenable to suit under § 1983 because, as private citizens, they do not act under color of state law. As to Count Five, plaintiffs have failed to state a claim upon which relief can be granted. Having considered all matters of record, it is

**ORDERED** that defendants' Motion to Dismiss, construed as a Motion for Summary Judgment, be, and the same is hereby, **GRANTED.** It is further

**ORDERED** that the above-styled civil action be, and the same is hereby, **DISMISSED** with prejudice and **STRICKEN** from the docket of the Court. It is further

**ORDERED** that the Clerk shall enter judgment for the defendants. It is further

**ORDERED** that, if plaintiffs should desire to appeal the decision of this Court, written notice of appeal must be received by the Clerk of this Court within thirty (30) days from the date of the entry of the Judgment Order, pursuant to Rule 4, Federal Rules of Appellate Procedure.