Dale McDANIEL, Isreal Owen Hawkins, Joshua Tribble, and Nicole Tribble, individually and on behalf of all others similarly situated, Plaintiffs,

v.

SOUTH & ASSOCIATES, P.C., Defendant.

No. CIV.A.03–2210–GTV.

United States District Court, D. Kansas.

July 1, 2004.

Geoffrey W. Clark, Mark C. Beam–Ward, William G. Wright, Hill, Beam–Ward & Kruse & Wilson, LLC, Overland Park, KS, for Plaintiffs.

Daniel B. Boatright, Stueve, Helder & Fiegel, LLP, Kansas City, MO, J. Nick Badgerow, Katherine Miller, Spencer Fane

Britt & Browne, Overland Park, KS, for Defendant.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiffs Dale McDaniel, Isreal Owen Hawkins, Joshua Tribble and Nicole Tribble (collectively "Plaintiffs") filed this action pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, against Defendant South & Associates, P.C. ("Defendant"). Specifically, Plaintiffs contend that Defendant improperly engaged in debt collection activity in violation of 15 U.S.C. § 1692g(b) after Plaintiffs disputed and requested verification of their respective debts.[1] The matter is before the court on Plaintiffs Dale McDaniel, Josh Tribble and Nicole Tribble's motion for partial summary judgment (Doc. 30) and Defendant's motion for summary judgment against all claims of Plaintiffs (Doc. 28). For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part, and Defendant's motion is granted in part and denied in part.

## I. FACTUAL BACKGROUND

The following facts are undisputed by the parties. Defendant is a law firm that focuses its practice on foreclosures, collections and bankruptcy. As part of its foreclosure practice, Defendant represents holders of notes and mortgages in foreclosure proceedings. The present action concerns Defendant's alleged noncompliance with the FDCPA after it received individual foreclosure referrals for Plaintiffs Dale McDaniel, Josh and Nicole Tribble, and Isreal Owen Hawkins.

1. Plaintiffs also allege class action claims, but the parties have agreed to first address the merits of Plaintiffs' individual claims.

2. Prior to January 30, 2003, Chase Manhattan Mortgage Corporation became the holder and

### A. Dale McDaniel

On December 5, 1996, Plaintiff Dale McDaniel executed a promissory note in the amount of $79,000 and a mortgage to secure repayment of the note to Equi–Financial, L.P. ("McDaniel Note and Mortgage").[2] Mr. McDaniel used the money to purchase his personal residence located in Kansas City, Kansas.

On January 30, 2003, Defendant mailed Mr. McDaniel a validation letter to provide him notice, as required by the FDCPA, that it had been retained to collect the debt concerning his personal residence. The letter informed Mr. McDaniel that he had thirty days to dispute the debt in writing, or the debt would be assumed valid. The letter further stated that if Mr. McDaniel timely disputed the debt, Defendant would obtain verification of the debt and send it to him.

On February 15, Mr. McDaniel mailed a letter to Defendant, acknowledging receipt of Defendant's validation letter and informing Defendant that he disputed the claims and requested verification of the debt. Defendant received Mr. McDaniel's letter on February 19.

On February 26, 2003, Defendant mailed a petition to foreclose the McDaniel Note and Mortgage ("McDaniel Petition") to the District Court of Wyandotte County, Kansas, along with a summons for service on each defendant in the foreclosure action. The McDaniel Petition alleged that Mr. McDaniel failed to make installment payments on the McDaniel Note and Mortgage. The McDaniel Petition further requested judgment against Mr. McDaniel for $84,402.96, plus interest, and foreclo-

owner of the McDaniel Note and Mortgage. On some date between January 30, 2003, and March 4, 2003, Deutsche Bank National Trustee Company become the holder and owner of the McDaniel Note and Mortgage.

sure of the mortgage. The clerk's office for the state district court file-stamped the McDaniel Petition on March 4, 2003. The McDaniel Petition was served by residential service on Mr. McDaniel's wife on March 6, 2003. Defendant published notice of the foreclosure action and notified Mr. McDaniel of that fact by letter on March 17, 2003.

On March 11, 2003, Defendant mailed the requested debt verification information to Mr. McDaniel.

### B. Joshua and Nicole Tribble

On November 19, 1998, Plaintiffs Joshua and Nicole Tribble ("the Tribbles") executed a promissory note in the amount of $125,400 and a mortgage to secure repayment of the note to Crossland Mortgage Corporation ("Tribble Note and Mortgage").[3] The Tribbles used the money to purchase their personal residence located in Overland Park, Kansas.

On January 6, 2003, Defendant mailed a letter to each of the Tribbles to provide them with notice that it had been retained to collect the debt concerning their personal residence. As with the letter Defendant sent to Plaintiff McDaniel, the Tribbles' letters informed them that they had thirty days to dispute the debt and obtain verification, or the debt would be assumed valid. The Tribbles immediately retained the services of an attorney to represent them regarding Defendant's attempt to collect the Tribble Note and Mortgage. On January 27, 2003, the Tribbles' attorney mailed and faxed a letter to Defendant, disputing the validity of the debt, and requesting a detailed verification of Defendant's allegations.

On or about January 23, Defendant mailed to the District Court of Johnson County, Kansas a petition to foreclose the Tribble Note and Mortgage ("Tribble Petition"), along with a summons for service on each defendant in the foreclosure action. The Tribble Petition alleged that the Tribbles failed to make installment payments on the Tribble Note and Mortgage. The Tribble Petition further requested judgment against the Tribbles for $120,864.16, plus interest, and foreclosure of the mortgage. The clerk's office for the state district court file-stamped the Tribble Petition on January 29, 2003. The Tribble Petition was served by personal service on Joshua Tribble on February 3, 2003.

On February 7, 2003, Defendant mailed an amended petition to foreclose the Tribble Note and Mortgage ("Amended Petition") to the District Court of Johnson County, Kansas. The Amended Petition stated that the Tribbles had filed for Chapter 7 bankruptcy relief and that the bankruptcy was discharged in November 2002. Furthermore, the Amended Petition requested judgment *in rem* against the Tribbles for $120,864.16, plus interest, and renewed the requests for relief contained in the original petition. The clerk's office for the state court file-stamped the Amended Petition on February 13. On February 21, the Amended Petition was served by personal service on Nicole Tribble.

On February 18, Defendant mailed letters to both Joshua and Nicole Tribble advising them that it was seeking to obtain service by publication against them pursuant to state law and attached a copy of the notice to be published in a local periodical for their review.

On March 10, 2003, Defendant notified the Tribbles that the foreclosure action had been dismissed. Defendant never

---

**3.** At some point before January 6, 2003, Chase Manhattan Mortgage Corporation be-

came the holder and owner of the Tribble Mortgage.

provided the Tribbles with verification of the debt as requested by their attorney.

### C. Isreal Owen Hawkins

In July 1995, David and Marjorie Carson decided to assist Plaintiff Hawkins in acquiring a house. At the time, Mr. Hawkins was experiencing financial trouble, and because of the strong relationship he maintained with the Carsons, Mr. Carson promised him he would help him obtain a residence. Once Mr. Hawkins found the home he wanted in Kansas City, Kansas, the Carsons obtained a loan from Mercantile Bank and executed a promissory note and mortgage to secure repayment of the note ("Carson Note and Mortgage"). Mr. Hawkins did not sign any of the closing or loan documents. The money was used to purchase the home in Kansas City, Kansas. The Carsons never lived in the home; instead, they immediately sold the home to Mr. Hawkins pursuant to a contract for deed. Mr. Hawkins made monthly payments to Mr. Carson, who in turn made payments to Mercantile Bank.

In 1999, the Carsons refinanced the mortgage with American Federal Mortgage and entered into a second contract for deed with Mr. Hawkins. Again, Mr. Hawkins did not sign any of the closing or loan documents in connection with the refinancing. From this point forward, Mr. Hawkins no longer made any separate payments to Mr. Carson; he mailed his mortgage payments directly to the mortgage company. On July 22, 2001, the Carsons transferred the property to Mr. Hawkins pursuant to a quit claim deed. As a result of this transaction, Mr. Carson told Mr. Hawkins to deal directly with the mortgage company.

In February 2002, Defendant received a foreclosure referral from the current holder of the Carson Note and Mortgage, Litton Loan Servicing, LP ("Litton").[4] Through discussions with a representative of Litton, Mr. Hawkins learned that Litton intended to refer the Carson Note and Mortgage to Defendant for foreclosure. On February 20, 2002, Mr. Hawkins prepared and faxed a handwritten letter to Defendant. He prepared the letter in the name of Mr. Carson, and signed Mr. Carson's name to the letter. The letter disputed the amount owed on the Carson Note and Mortgage due to payments that were allegedly misapplied. Mr. Hawkins's name did not appear on the letter. Also on February 20, Defendant mailed letters to each of the Carsons, as required by the FDCPA, stating that it had been retained to collect the debt concerning the residence in Kansas City, Kansas. Mr. Hawkins received the letters addressed to the Carsons a few days later. At the direction of Litton, however, the foreclosure referral was closed before any foreclosure activity transpired.

On April 16, 2002, Defendant again mailed letters to each of the Carsons, as required by the FDCPA, stating that it had been retained to collect the debt concerning the residence in Kansas City, Kansas. On April 30, 2002, Defendant mailed to the District Court of Wyandotte County, Kansas a petition to foreclose the Carson Note and Mortgage ("Carson Petition"), along with a summons for service on each defendant in the foreclosure action. As a resident at the property, Mr. Hawkins was a named defendant in the foreclosure action. The clerk's office for the state district court file-stamped the Carson Petition on May 8, 2002. Mr. Hawkins asserted an FDCPA counterclaim in the foreclosure action, but the

---

4. Prior to December 2001, State Street & Trust Company became the holder and owner of the Carson Note and Mortgage. At some point thereafter, Litton Loan Servicing, LP began servicing the Carson Note and Mortgage.

claim was eventually dismissed by the state court.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Lack of a genuine issue of material fact means that the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984).

## III. DISCUSSION

■ Congress enacted the FDCPA to combat "abusive, deceptive and unfair debt collection practices." 15 U.S.C. § 1692(a). The express purpose of the statute is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.* § 1692(e). "Because the FDCPA ... is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir.2002) (citations omitted).

■ Plaintiffs maintain that Defendant violated the debt validation provisions contained in § 1692g of the FDCPA.[5] Section 1692g(a) requires a debt collector to provide a written validation notice to a consumer. 15 U.S.C. § 1692g(a). This notice must include: the amount of the debt; the name of the creditor; a statement that the debt's validity will be assumed unless the consumer disputes the debt within thirty days of receiving the validation notice; and a statement that the consumer, within thirty days after receiving the notice, may request that the debt collector provide verification of the debt and the name and address of the original creditor. *Id.* If the consumer requests the debt collector to verify the debt or to provide the name and address of the original creditor, § 1692g(b) requires the debt collector to cease collection of the debt until the requested information is mailed to the consumer. *Id.* § 1692g(b). "Section 1692g(b) thus con-

---

**5.** The FDCPA provides for civil liability under    15 U.S.C. § 1692k.

fers on consumers the ultimate power vis-a-vis debt collectors: the power to demand the cessation of all collection activities." *Brady v. Credit Recovery Co., Inc.,* 160 F.3d 64, 67 (1st Cir.1998).

It is Plaintiffs' contention that Defendant continued to collect the debts they allegedly owed after Defendant received written notice from Plaintiffs disputing the debt and before Defendant mailed the requested verification information. The court will analyze the claims of each Plaintiff separately.

### A. Dale McDaniel

The circumstances surrounding Plaintiff McDaniel's claims are not contested. After Mr. McDaniel received a validation notice from Defendant, he notified Defendant within the requisite thirty day period that he disputed the debt and requested verification. Before Defendant mailed him the requested information, however, Defendant filed a petition and summons to foreclose the McDaniel Note and Mortgage in Kansas state court and, at Defendant's direction, the county sheriff served the summons and petition on Plaintiff's wife at their residence.

Mr. McDaniel argues that Defendant's efforts to pursue mortgage foreclosure violated § 1692g(b)'s mandate to cease all collection efforts until the debt collector mails a verification of the debt to the consumer. Defendant responds by arguing that mortgage foreclosure is not debt collection activity under the FDCPA, and that even if it is debt collection activity, the FDCPA's bona fide error defense applies to shield it from liability.

### i. Judicial Foreclosure is Debt Collection Activity under the FDCPA

In support of its position that mortgage foreclosure is not debt collection activity under the FDCPA, Defendant relies on a trio of district court cases from other circuits. *See Bergs v. Hoover, Bax & Slovacek, L.L.P.,* No. 3:01–CV–1572–L, 2003 WL 22255679 (N.D.Tex. Sept.24, 2003); *Hulse v. Ocwen Fed. Bank, FSB,* 195 F.Supp.2d 1188 (D.Or.2002); *Heinemann v. Jim Walter Homes, Inc.,* 47 F.Supp.2d 716 (N.D.W.Va.1998).

In *Heinemann v. Jim Walter Homes, Inc.,* the court interpreted the *pro se* plaintiffs' complaint as an attempt to maintain an FDCPA claim regarding conduct that occurred during the foreclosure on a deed of trust. 47 F.Supp.2d at 722. The court determined that the only actions of the defendants not barred by the FDCPA's one-year statute of limitations concerned "the publication of the notice of sale and the final trustees sale." *Id.* In denying the plaintiffs relief under the FDCPA, the court concluded that "[s]ince the trustees were not collecting on the debt at that time but merely foreclosing on the property pursuant to the deed of trust, these activities do not fall within the terms of the FDCPA." *Id.*

Following *Heinemann's* analysis, the court in *Hulse v. Ocwen Federal Bank, FSB,* held that "the activity of foreclosing on ... property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA." 195 F.Supp.2d at 1204. The plaintiffs in *Hulse* argued that one of the defendants violated the FDCPA by contacting them after learning that they had obtained legal representation. *Id.* at 1202. In response, the particular defendant asserted that it was not a "debt collector" under the statute because it was the originator of the loan under the deed of trust. *Id.* The court determined that even if the defendant was subject to the FDCPA, the defendant could not be held liable on any claim arising out of its pursuit of non-judicial foreclosure. *Id.* at 1203. The court reasoned:

Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.

An important point here is that with a trust deed, the trustee possesses the power the [sic] sale which may be exercised after a breach of the obligation for which the transfer in trust of the interest in real property is security. Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor.

*Id.* at 1204 (citation omitted).

Finally, Defendant relies on *Bergs v. Hoover, Bax & Slovacek, L.L.P.,* in support of its position. The plaintiffs in *Berg* argued that the defendant violated the FDCPA by failing to cease all collection activities after they disputed the alleged debt and by threatening to sell the plaintiffs' house without the legal authority to do so. 2003 WL 22255679, at *3. The defendants maintained that the pursuit of non-judicial foreclosure proceedings was not debt collection activity under the FDCPA, and therefore, the defendants were not "debt collectors" under the statute. *Id.* Adopting the reasoning in *Hulse,* the court concluded "that instituting foreclosure proceedings is not debt collection under the FDCPA." *Id.* at *6.

The court concludes that *Heinemann, Hulse* and *Bergs* are distinguishable from the present case. Those decisions involved the pursuit of non-judicial foreclosure proceedings under a deed of trust, while De-

fendant pursued judicial foreclosure proceedings-which included seeking judgment on a note-by filing a lawsuit in state court. *See Heintz v. Jenkins,* 514 U.S. 291, 294, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (holding that the FDCPA applies to a lawyer engaged in litigation because "a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts") (citation omitted). The three cases cited by Defendant focus on the difference between collecting money from a consumer as opposed to enforcing an interest in real property. In particular, the *Hulse* court reasoned that the FDCPA's purpose is to protect consumers from debt collectors attempting to collect funds, not attempts to foreclose interests in property. But Defendant's petition requested a foreclosure of the real property and requested a personal judgment against Mr. McDaniel for $ 84,402.96, plus interest. Thus, Defendant attempted to collect the money owed on the loan.

In response, Defendant contends that obtaining a personal judgment "is a necessary prerequisite to mortgage foreclosure in Kansas." However, the fact that judicial foreclosure may be the exclusive method of foreclosure in Kansas [6] does not excuse Defendant's conduct. "[T]he FDCPA's time sequence is quite clear: (1) the consumer disputes the debt; (2) the debt collector ceases collection; and (3) must continue to cease collection until the debt collector verifies the debt and mails a copy of the verification to the consumer." *Spencer v. Hendersen–Webb, Inc.,* 81 F.Supp.2d 582, 593 (D.Md.1999); *see also Bartlett v. Heibl,* 128 F.3d 497, 501 (7th Cir.1997) ("The debt collector is perfectly free to sue within thirty days; he just

---

**6.** *But see* Charles R. Wilson, *Validity of Power of Sale and Procedural Considerations in its Exercise,* 16 U. Kan. L.Rev. 611 (1968) (discussing the potential validity of a power of sale in a mortgage as a method of foreclosure in Kansas).

must cease his efforts at collection during the interval between being asked for verification of the debt and mailing the verification to the debtor.").

■ The court holds that Defendant's actions in filing a judicial foreclosure proceeding against Mr. McDaniel amounted to debt collection activity under the FDCPA. After Mr. McDaniel properly disputed his debt, he was entitled to the grace period provided by the FDCPA. Instead, Defendant tried to collect on the underlying obligation by filing a judicial foreclosure proceeding against him. The court does not believe that the broad purpose of the FDCPA would be served if debt collectors could avoid liability based on the character of their debt collection activities. *See Peeples v. Blatt*, No. 00 C 7028, 2001 WL 921731, at *3 (N.D.Ill. Aug.15, 2001) (citation omitted) (rejecting the argument that the enforcement of a security interest is not debt collection under the FDCPA because the purpose is not to obtain money).

### ii. Bona Fide Error

■ Defendant maintains that even if the court concludes that its pursuit of mortgage foreclosure constitutes debt collection activity in violation of the FDCPA, Plaintiff McDaniel is still not entitled to relief because the mailing of the petition and summons to state court was the result of an unintentional, bona fide error. Specifically, Defendant asserts that the bona fide error defense applies because it developed a "sophisticated case management system" to avoid violations of the FDCPA. In response to Defendant's bona fide error defense, Plaintiff McDaniel argues that Defendant did not maintain reasonable procedures to ensure that incoming mail was timely received and reviewed by attorneys so that a verification request letter could be noted in Defendant's case management system within a reasonable time after its receipt.

■ The FDCPA contains an affirmative defense to protect debt collectors from liability as a result of clerical errors and mistakes of law. *Johnson*, 305 F.3d at 1123–24. Section 1692k(c) of the FDCPA provides:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). "Thus, an FDCPA defendant seeking the protection of the bona fide error defense carries the burden of proving that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite 'the maintenance of procedures reasonably adapted to avoid' the violation." *Johnson*, 305 F.3d at 1121.

The summary judgment record indicates that attorneys and staff members at Defendant's office utilize a computer case management system to handle case files and to ensure compliance with the FDCPA. Each case file contains information concerning a person and/or property, and the debt associated with that person and/or property. The computer system contains a software program to follow the business process applicable to a particular case file. For example, a case file involving foreclosure is set up to perform different tasks relevant to the foreclosure process.

Alan South, managing partner for Defendant, explained in his deposition how attorneys and staff members at the law firm use the case management system to ensure that collection activity ceases when a consumer requests debt verification. He stated that when a verification request is received, it is supposed to be reviewed by an attorney to determine if it is a verifica-

tion request. Once a verification request is confirmed, an attorney, staff member or a person with authority to work on the computer system opens up the case file and enters that fact into the system. This entry triggers the suspension of the collection process. The task icons for the case disappear, blocking a person's ability to perform any further tasks on the case management system. Mr. South further stated that it is the policy of the law firm for a consumer's request for verification to be entered into the case management system on the same day it is received or within twenty-four hours of its receipt.

After the verification request is entered into the system, an employee at Defendant's office must then request the debt verification information from the client. When the information is received and sent to the consumer, an attorney or staff member may "switch on" the system again, thus permitting collection tasks on the case to continue.

The summary judgment record discloses when Mr. McDaniel's debt verification request made its way through Defendant's case management system. On February 15, Mr. McDaniel mailed his verification request to Defendant. Defendant received the letter on February 19, but Mr. McDaniel's verification request was not entered into the system until February 25.

Michael Zevitz, managing attorney for Defendant's Kansas foreclosure department, testified in his deposition concerning the handling of Mr. McDaniel's debt verification request. He stated that on the morning of February 25, a staff member prepared the McDaniel Petition. Later in the day, Mr. Zevitz reviewed the McDaniel Petition, signed it, and handed it back to the staff member. At around two in the afternoon that same day, a staff member noted in the system that a letter from Mr. McDaniel had been received and sent it to Mr. Zevitz to review. Mr. Zevitz did not review the letter during the workday, but he took the letter home with him that night and suspended the collection process at approximately 10:00 p.m. on February 25. He testified in his deposition that even though the process was suspended, the McDaniel Petition had already arrived in the mailing room and was sent on February 26. The case remained in suspension mode until the verification information was sent to Mr. McDaniel on March 11.

The court concludes that whether the bona fide error defense applies to protect Defendant from liability is a question of fact for the jury. The court first observes that although Mr. South indicated that it was the policy of the law firm to enter a verification request into the system within twenty four hours of its receipt, Mr. South also noted in his deposition that prior problems had existed in getting mail delivered to its recipient. In this case, it took Defendant six days to verify Plaintiff's request. The court determines that a jury is entitled to decide whether reasonable procedures existed at Defendant's office to ensure timely review of a consumer's verification request. Second, the court determines that it is the province of the jury to decide whether Defendant's mailing of the McDaniel Petition within twenty-four hours after the verification request was entered into the case management system constituted a bona fide clerical error. Accordingly, both parties' motions for summary judgment are denied as to the claims of Plaintiff McDaniel. An issue for trial remains as to the applicability of the bona fide error defense.

### B. Joshua and Nicole Tribble

The timing of the events surrounding the Tribbles' claims, although uncontroverted, present a unique set of circumstances. On January 6, Defendant mailed validation letters to the Tribbles. On Jan-

uary 23, Defendant mailed the foreclosure petition and summons to state court. Then on January 27, the Tribbles' attorney mailed the dispute letter to Defendant, and also faxed a copy to Defendant which was received by its office on January 28. At this point, the FDCPA required Defendant to cease all collection activity until it mailed a validation letter to the Tribbles, but the foreclosure petition was already headed to state court. The clerk's office did not file-stamp the petition until January 29, one day after Defendant's office received the Tribbles' dispute letter. A few days later, on February 3, the sheriff served the summons and petition on the Tribbles.

On February 13, Defendant filed an amended petition clarifying that it sought only an *in rem* judgment due to the Tribbles' bankruptcy. On February 21, the sheriff served the summons and amended petition on the Tribbles. Furthermore, on February 18, Defendant sent letters to the Tribbles informing them that notice of the lawsuit was being published in a local newspaper.

■ The court's prior holding that pursuing judicial foreclosure proceedings constitutes debt collection activity also controls the Tribbles' claims. Defendant never mailed a debt verification to the Tribbles, despite their timely request, and thus, Defendant's collection activity conducted after January 28 violated the FDCPA.

■ The court determines that Defendant should not be held liable for the official filing of the foreclosure petition on January 29 because Defendant mailed the foreclosure petition before it received the Tribbles' dispute letter. But the court concludes that when the Tribbles exercised their rights within the thirty day period, Defendant should have ceased its pursuit of the foreclosure, including the sheriff's service of process on the Tribbles. The

summons and foreclosure petition required the Tribbles to respond to the lawsuit or face the consequences of a default judgment, thus ignoring their rights under the FDCPA. Furthermore, the rest of Defendant's actions in pursuing the foreclosure also violated the grace period provided by the FDCPA. This includes the filing of the amended petition, the sheriff's service of process relating to the amended petition, and the letters to the Tribbles concerning the publication of the lawsuit. Accordingly, the court grants the Tribbles' motion for summary judgment as to the liability portion of their FDCPA claims.

## C. Plaintiff Hawkins

Defendant's summary judgment motion against the claims of Plaintiff Hawkins is uncontested. In support of its motion, Defendant makes several arguments, but the court need only address one of them: Plaintiff Hawkins is not a "consumer" within the meaning of the FDCPA.

■ Section 1692g(b) of the FDCPA, the provision Plaintiff Hawkins maintains Defendant violated, requires a debt collector to send verification of a debt if a "consumer" disputes the debt in writing within thirty days after receiving a notice of the debt. The FDCPA defines a consumer as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). It is uncontroverted that Plaintiff Hawkins never signed any of the closing or loan documents associated with the Carson Note and Mortgage or the refinancing of the Carson Note and Mortgage. Mr. and Mrs. Carson were the only individuals legally obligated under the Carson Note and Mortgage. Plaintiff Hawkins's obligations arose out of the contract for deed he signed with the Carsons. It is further uncontroverted that except for the pleadings in the foreclosure matter, Defendant did not send any correspon-

dence to Plaintiff Hawkins, but only sent letters addressed to the Carsons regarding the Carson Note and Mortgage. Defendant never considered Plaintiff Hawkins to be an obligor on the Carson Note and Mortgage. Accordingly, the court concludes that Plaintiff Hawkins is not a "consumer" within the meaning of the FDCPA and his claims against Defendant are dismissed.

IT IS, THEREFORE, BY THE COURT ORDERED that Plaintiffs' motion for partial summary judgment (Doc. 30) is granted in part and denied in part, and Defendant's motion for summary judgment (Doc. 28) is granted in part and denied in part. Specifically, the court rules that: (1) Plaintiffs and Defendant's motions are denied as to Plaintiff Dale McDaniel's claims because genuine issues of material fact remain regarding the application of the bona fide error defense; (2) Plaintiffs' motion is granted and Defendant's motion is denied as to Plaintiffs Josh Tribble and Nicole Tribble's claims; and (3) Defendant's motion is granted as to Plaintiff Hawkins's claims. Copies of this order shall be transmitted to counsel of record.

IT IS SO ORDERED.